UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 11-103-GWU


THOMAS JEROME MEYER,                                              PLAINTIFF,


VS.                                **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                 DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.   Is the claimant currently engaged in substantial gainful activity?
     If so, the claimant is not disabled and the claim is denied.

2.   If the claimant is not currently engaged in substantial gainful
     activity, does he have any "severe" impairment or combination
     of impairments--i.e., any impairments significantly limiting his
     physical or mental ability to do basic work activities?  If not, a
     finding of non-disability is made and the claim is denied.

3.   The third step requires the Commissioner to determine
     whether the claimant's severe impairment(s) or combination of
     impairments meets or equals in severity an impairment listed
     in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

2

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Thomas Jerome Meyer, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of degenerative disc disease of the lumbosacral spine with chronic low back pain.  (Tr. 12).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Meyer retained the residual functional capacity to perform a significant number of sedentary jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 13-17).  The Appeals Council declined to review, and this action followed.

At the second of two administrative hearings, ALJ Don C. Paris asked the VE whether the plaintiff, a 47-year-old man with a tenth grade education and a history of semi-skilled work at the medium level of exertion, could perform any jobs if he were capable of lifting up to 10 pounds occasionally and less than 10 pounds frequently, with the ability to stand and/or walk for at least two hours in an eight-hour

5

day (no more than 30 minutes at a time) and sit eight hours in an eight-hour day (up to two hours at a time), and also had the following non-exertional restrictions.  He: (1) could never crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, kneel, crouch, twist, and climb ramps and stairs; and (3) should not perform work requiring the operation of foot controls with his left foot or leg, or use his left foot or leg to perform forceful work.  (Tr. 80-81).  The VE responded that there were jobs that such a person could perform at the sedentary level, such as clerical/data entry/recording information work, weighing/measuring/checking/inspecting work, and packaging/sorting positions, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 81-82).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Although Mr. Meyer alleged an onset date of November 6, 1996 in his current application for SSI (Tr. 169-72), the ALJ noted that he had filed a prior application for Disability Insurance Benefits (DIB) alleging the same onset date.  The prior DIB application was denied in an ALJ decision of August 28, 2002 (Tr. 107-13), and the current ALJ noted that it was administratively final (Tr. 11).  In accordance with the case of Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997) and Acquiescence Ruling 98-4(6), the ALJ further noted that the functional capacity finding of the August 28, 2002 decision would be binding on a subsequent DIB claim involving an unadjudicated period.  (Tr. 12).  While the plaintiff did file a

new DIB application at the same time as his current SSI application (Tr. 173-74), his attorney agreed that he was not eligible because his Date Last Insured was December 31, 2001 and that the application should be dismissed (Tr. 87).  The ALJ noted that the 2007 SSI application involved a period of time following March 28, 2007, and declared that he would make a separate finding regarding the plaintiff's functional capacity.  (Id.).  However, he ultimately adopted the same functional capacity as in the 2002 decision.  (Tr. 13, 110).

The plaintiff makes several arguments on appeal.  The most significant is that the ALJ improperly evaluated the opinion of a consultative, one-time examining source, Dr. Nathan Joos.

The plaintiff testified that his Worker's Compensation benefits had been cut off two or two and a half years after his accident (Tr. 74, 96), and that he had not received any recent medical treatment and had been unable to obtain medical records from his chiropractor because of a billing dispute.  The only medical examinations in the transcript were from one-time examiners.

Dr. Martin Fritzhand conducted an examination on June 5, 2007, but had no records available and stated that he would be unable to assess a functional impairment without at least plain x-rays of the lumbar spine.  (Tr. 242).  A state agency non-medical source thereupon prepared a physical residual functional capacity assessment adopting the 2002 ALJ restrictions.  (Tr. 244-50).  Dr. Allen Dawson, a non-examining state agency physician, signed a physical functional

evaluation form on September 17, 2007 affirming the non-medical source's findings on the ground that there was no new evidence to alter the assessment. (Tr. 252-58).

At the first administrative hearing, in March, 2009, at which the plaintiff alleged low back pain with nerve damage to his left leg, ALJ Charles J. Arnold concluded after hearing the testimony that Mr. Meyer should have an orthopedic consultative examination with x-rays and a nerve conduction study. (Tr. 101). Dr. Joos then conducted his examination and obtained x-rays showing degenerative disc disease at two levels with disc space narrowing and posterior osteophytic changes. (Tr. 260). His examination showed that the plaintiff had frequently adjusted his position in the chair, had a mild limp, and a limitation of range of motion of the spine, although there was no diminishment of the strength in the leg muscles. (Tr. 260-62). In his narrative report, Dr. Joos stated that Mr. Meyer's physical examination was in agreement with his reported limitations, and he would likely experience significant difficulty with a job requiring any degree of physical strain. (Tr. 276). He felt that his ability to sit in one position should be limited to 15 minutes at a time, and added that Mr. Meyer "may have success at such sedentary positions, given the opportunity for frequent breaks or changes in position." (Id.). Dr. Joos completed a medical source statement reporting that the plaintiff could lift and carry 21 to 50 pounds occasionally and up to 10 pounds frequently, and that he could sit for a total of four hours in an eight-hour day (no more than 15 minutes

at a time), stand two hours (no more than 15 minutes at a time) and walk two hours (no more than 15 minutes at a time).  Dr. Joos opined that the plaintiff did have a medical necessity for using a cane, apparently based on his statements as well as a finding of "instability due to pain," although he could walk without it and had come to the hearing without it.  It was "just easier with it," according to Dr. Joos.  (Tr. 266).  Mr. Meyer could occasionally reach with both arms and occasionally reach overhead with his left hand and frequently with his right, occasionally climb, balance, stoop, kneel, crouch, and crawl, occasionally use foot controls and occasionally tolerate unprotected heights, moving mechanical parts, and operate a motor vehicle, in the examiner's opinion.  (Tr. 267-69).

ALJ Paris summarized the report of Dr. Joos by saying that the plaintiff had a limitation in ambulation and range of motion at the hips, but could perform work activities at the sedentary exertional level with a limited ability to sit in one position.  (Tr. 15).  He rejected the need for a change of position after 15 minutes because of his observation that Mr. Meyer sat for 30 minutes during the January 14, 2010 hearing without changing his position.  (Id.).

The ALJ then went on to note the restrictions in the assessments prepared by the non-examining state agency sources, without mentioning that one of these sources was not a physician and that neither of them had the benefit of a review of Dr. Joos's opinion, and concluded that a "combined reading of these assessments

along with the findings of Dr. Nathan Joos and Dr. Martin Fritzhand support the above residual functional capacity."  (Id.).

ALJ Paris did not discuss the conclusions of Dr. Joos in detail, even though he was the only examining source to express an opinion regarding functional capacity.  Social Security Ruling (SLR) 96-6p provides that the defendant's "regulations provide progressively more rigorous tests for weighing opinions as the ties for the source of the opinion and the individual become weaker."  See 20 C.F.R. § 416.927(d)(1), which provides that more weight is generally given to the opinion of an examining source than to that of a non-examiner.  The regulations go on to provide at § 916.927(f)(2)(ii) that unless a treating source opinion is given controlling weight, the ALJ must explain the weight given to the opinions of the state agency consultants, as he also must do for any opinions from treating sources and non-treating sources.

Applying the above standards, the ALJ's decision clearly does not pass muster.  While he was not necessarily required to accept the restrictions of Dr. Joos, the ALJ should have provided some understandable rationale for rejecting them. He did this in relation to the 15 minute sitting restriction by saying that he observed the plaintiff sitting for a longer period of time at the second hearing.  However, he did not explain the reasons for finding that the plaintiff could sit for fully eight hours per work day when Dr. Joos limited him to four hours, and Dr. Dawson limited him to about six hours.  This is a potentially significant vocational distinction since SSR

96-9p provides that sitting in a sedentary job generally totals about six hours per day.  Likewise, there might have been good reasons for discounting the reported need to use a cane, but the ALJ said nothing about it.  SSR 96-9p states that under certain circumstances the use of a cane would not necessarily preclude the performance of sedentary work, but under certain circumstances the occupational base may be significantly eroded.  Therefore, this cannot be simply dismissed as harmless error.

Finally, the court notes that both the Dictionary of Occupational Titles (DOT) Sections 205.367-014, referring to the clerical work, and 521.687-086, referring to the packaging and sorting work described by the VE, indicate that the jobs would require frequent reaching, which is inconsistent with Dr. Joos's assessment.[1]  This information suggests that the reaching limitations could also be of vocational significance but they were also unmentioned by the ALJ.  In sum, the court cannot find that the lack of any rationale for accepting Dr. Joos's opinion was simply harmless error.

The plaintiff also argues that the ALJ improperly evaluated his credibility.  He notes that in evaluating pain, "[t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity

---

[1]A third DOT section cited by the VE, 219.587-010, refers to the job of parimutuel ticket checker, which might not be representative of the weighing/measuring/checking/ inspecting work which the VE was describing, but, in any case, this job is said to require constant reaching.

of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).  The ALJ did find objective evidence of an underlying medical condition but determined that the plaintiff's "statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible to the extent that they are inconsistent with the . . . residual functional capacity assessment."  (Tr. 14).  He proceeded to cite the following factors: (1) surprisingly little treatment for his condition although it allegedly caused him "excruciating pain"; (2) the fact that Mr. Meyer did not take any pain medication and was not currently in physical therapy or seeing a chiropractor; and (3) the fact that Mr. Meyer's Worker's Compensation benefits were terminated in September, 1999.  (Id.).  The plaintiff goes on to cite the regulations at 20 C.F.R. § 416.929(c)(3) which provide that:

> Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The locations, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v ) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Although the ALJ considered the issues of medication and treatment, the plaintiff is correct in saying that the other enumerated factors were not directly addressed.  Since the case is being remanded on other grounds, this is a matter that can be addressed in a new hearing decision.

The decision will be remanded for further consideration.

This the 1st day of December, 2011.

Signed By:

**G. Wix Unthank**

**United States Senior Judge**